UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KENDALL GARRETT MOSING            CIVIL ACTION NO. 14-CV-2608
and ZLOOP LA, LLC

VERSUS                            JUDGE HAIK

ROBERT BOSTON,                    MAGISTRATE JUDGE HANNA
ROBERT LABARGE, ZLOOP, LLC,
and/or ZLOOP, INC.

## MEMORANDUM RULING
### *(Rec. Doc. 11)*

Currently pending before the undersigned, on referral from the district judge for ruling, is the defendants' Motion to Transfer to the Western District of North Carolina pursuant to 28 U.S.C. §1404(A) [Rec. Doc. 11]. After considering the applicable law, the written submissions and arguments of the parties, and for the following reasons, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action by Zloop LA, LLC and its sole owner Kendall G. Mosing against Zloop, LLC and its successor, Zloop, Inc., Robert Boston and Robert LaBarge for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a *et seq*.; SEC Rule 10b-5, 17 C.F.R. §240.10b–5; Sections 11, 77d and 77l of the Securities Act of 1933, 15 U.S.C.A. § 77a *et seq*.;SEC Regulation D, 17 C.F.R. § 230.500 *et seq*.; the Louisiana Securities Law, La. R.S.

51:701 *et seq.*; the Louisiana Business Opportunity Law, La. R.S. 51:1821 *et seq.*;

the Louisiana Unfair Trade Practice Act, La. R.S. 51:1401; fraud; conversion;

breach of contract; negligent misrepresentation and detrimental reliance.  Kendall

Garrett Mosing is a Louisiana resident and sole member of Zloop LA, LLC, a

Louisiana limited liability company.  Defendant Zloop, LLC was a Delaware LLC

with its principal place of business in North Carolina; ZLOOP, Inc. is a Delaware

corporation with its principal place of business in North Carolina; Robert Labarge

is a citizen of South Carolina who resides in North Carolina; and Robert Boston is

a citizen and resident of Maryland. Both Labarge and Boston are alleged to be

officers and directors of ZLOOP, Inc. [Rec. Doc. 1, pp. 7-8]. In a 102 page

Complaint, the plaintiffs detail a long and complicated chronology of events

alleged to have been initiated by the defendants which they contend constituted

fraud, deception, misrepresentation, forgery and other dishonest acts designed to

induce Mosing to invest in the Zloop franchise enterprises described to him.[1]

    According to the Complaint, the defendants generally communicated with

Mosing through his trusted friend, and on numerous occasions Mosing was

persuaded to invest in Zloop franchises, to loan money to Zloop and to establish

---

[1]Zloop purports to recycle electronic waste for profit.  From old electronic equipment, they
produce byproducts (copper, plastic, etc) for sale on the commodities market.  Franchisees collect
e-waste to be processed, earning a percentage of the processing revenue.

lines of credit for Zloop, secured by Mosing's money. Specifically, the plaintiffs allege that beginning on September 25, 2012, the defendants began making overtures to Mosing regarding prospects for Zloop franchises in Louisiana and Ohio. On October 4, 2012, Mosing signed franchise disclosure documents related to the possible purchases of three Louisiana Zloop franchises. [Rec. Doc. 11-3] The documents disclosed various aspects of the contemplated franchise agreement, including specifically identified risk factors to be considered by potential purchasers. Included were the following provisions:

> 1. THE FRANCHISE AGREEMENT REQUIRES THAT ANY ACTION BROUGHT BY EITHER PARTY AGAINST THE OTHER IN ANY COURT SHALL BE BROUGHT WITHIN THE STATE OF NORTH CAROLINA. OUT OF STATE LITIGATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO LITIGATE IN NORTH CAROLINA THAN IN YOUR HOME STATE. THIS PROVISION IS SUPERSEDED BY CERTAIN STATE LAWS.
>
> 2. THE FRANCHISE AGREEMENT STATES THAT NORTH CAROLINA LAW GOVERNS THE AGREEMENT, AND THIS LAW MAY NOT PROVIDE THE SAME PROTECTIONS AND BENEFITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS.

[Rec. Doc, 11-3, p. 2]. The page on which these provisions appear bears the initials "KGM" in the bottom, right corner. Mosing's full signature, as "Franchisee," appears at page 56 of the document.

Eleven days later, on October 15, 2012, Mosing signed three franchise agreements for the purchase of the Louisiana franchises by/for three limited liability companies, which the plaintiffs assert were not in existence at the time and were never formed.[2]  Mosing initialed each page of the agreements. [Rec. Doc. 11-3, pp. 57-168].  Each franchise agreement contains the following identical provision, at art. XXIV(B):

> The parties agree that any action brought by either party against the other in any court, whether federal or state, shall be brought within the State of North Carolina and do hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.

On September 23, 2013, Mosing executed the option to purchase eight Texas franchises.  The Texas franchise agreements purport to have been signed by Kendall Mosing as franchisee on January 2, 2014, but Mosing has declared he has no memory of ever signing the Texas documents, and he disputes the date on the documents.  He does not declare that he never signed the agreements, or that he never owned the Texas franchises, and in briefs the plaintiffs state that he maintained his position as owner of all franchise rights in Louisiana and Texas as of April 30, 2014. [Rec. Doc. 23, p. 15].  The Texas franchise agreements contain

---

[2]      Zloop LA-T1, LLC, Zloop LA-T2, LLC, and Zloop LA-T3, LLC.  The named plaintiff Zloop LA, LLC was formed 17 days later on November 2, 2012.

the identical forum-selection provision cited above from the Louisiana franchises. [Rec. Doc. 11-4, pp. 1-146].

The defendants seek to have this litigation transferred to North Carolina, consistent with the forum-selection clauses appearing in the franchise agreements. [Rec. Doc. 11]. They assert that the plaintiffs violated the mandatory North Carolina forum selection clauses in the franchise agreements by filing suit in this court. In response, the plaintiffs argue that (1) Mosing's claims are not within the scope of the forum selection clauses, since the plaintiffs do not claim breach of the franchise agreement(s), but assert claims which are non-contractual and beyond the scope of the clause, and (2) enforcement of the forum-selection clause is unreasonable under the circumstances of this case. [Rec. Doc. 23].

## APPLICABLE LAW AND ANALYSIS

*1. Whether the forum selection clause is mandatory or permissive*

Parties to a contract are permitted to select venue via a forum selection clause.[3] In order to find whether a forum selection clause requires the parties to litigate in the named forum, a court must first determine whether the forum

---

[3]*City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501(5th Cir. 2004).

selection clause is mandatory or permissive.[4]  Where a forum selection clause is

ambiguous and subject to more than one reasonable interpretation, the clause is

properly construed as permissive.  Mandatory forum selection clauses have

"express language limiting the action to the courts of a specific locale which is

clear, unequivocal and mandatory."[5]  "On the other hand, a permissive forum

selection clause authorizes jurisdiction or venue in a selected forum, but does not

prohibit litigation elsewhere."[6]  The Fifth Circuit explained:

> A party's consent to jurisdiction in one forum does not necessarily
> waive its right to have an action heard in another. For a forum
> selection clause to be exclusive, it must go beyond establishing that a
> particular forum will have jurisdiction and must clearly demonstrate
> the parties' intent to make that jurisdiction exclusive. It is important to
> distinguish between jurisdiction and venue when interpreting such
> clauses. Although it is not necessary for such a clause to use the word
> "venue" or "forum," it must do more than establish that one forum
> will have jurisdiction.[7]

The plaintiffs argue that the forum-selection clause at issue (Paragraph B)

should be considered permissive when read in conjunction with the paragraph

---

[4]*Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127(5th Cir. 1994).

[5]*Id.* at 127-28.

[6]*Bentley v. Mutual Benefits Corp.*, 237 F.Supp.2d 699, 701(S.D.Miss.2002)(*citing Caldas & Sons, Inc.* at 127-28).

[7]*City of New Orleans v. Municipal Administrative Services Inc.*, 376 F.3d at 504.  See also *International Environmental Services, Inc. v. Maxum Industries, LLC*, No. 14-cv-00601, 2014 WL 4629662, at *3 (W.D. La. Sept. 15, 2014).

following it in the franchise agreement (Paragraph C)[8], which the plaintiffs contend "modifies Paragraph B." [Rec. Doc. 46, p. 2]. That argument is unpersuasive since the two paragraphs address different things, with Paragraph C addressing the 'rights and remedies' available to the parties, and Paragraph B declaring the parties' intent and agreement that those rights and remedies be asserted within the State of North Carolina. Paragraph C does nothing to alter the content of Paragraph B. There is no reason to conflate the two as each can stand alone to clearly and unambiguously reveal the intent of the parties.

Mosing has also argued that promissory notes executed by Zloop, LLC as borrower, to Mosing as holder, "require a Lafayette, Louisiana forum to resolve disputes when read *in pari materia*." [Rec. Doc. 23, p. 15]. The language in the promissory notes addresses only the parties' consent to personal jurisdiction in the state and federal courts in Lafayette Parish, Louisiana.[9] There is no mandatory

---

[8] Paragraph C provides:
No right or remedy conferred upon or reserved to Franchisor or Franchisee by this Agreement is intended to be, nor shall be deemed to be, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy. [Rec. Doc. 11-3, p. 162].

[9] 6.    GOVERNING LAW.
(a) Choice of Law. The laws of the state of Louisiana govern this note (without giving effect to its conflicts of law principles).
(b) Choice of Forum. Both parties consent to the personal jurisdiction of the state and federal courts in Lafayette Parish, Louisiana. [Rec. Doc.18-7, p. 2]

language cited from the promissory notes to warrant characterizing the referenced provision as a forum-selection clause or anything other than a permissive consent-to-jurisdiction clause which cannot overcome or 'trump' the mandatory language of the actual forum-selection clause appearing in the franchise agreements.

It is the finding of this Court that the language in the forum-selection clause that, "***any action*** brought by ***either party*** against the other ***in any court***, whether federal or state, ***shall be brought within the State of North Carolina***," is clear, unequivocal, and mandatory.

*2. Whether the forum selection clause applies to the parties and claims*

Whether the forum-selection clause applies to this case involves two separate inquiries: (1) whether the forum-selection clause is enforceable, and (2) whether the present case falls within the scope of the forum-selection clause.[10] The enforceability of a forum-selection clause is a question of law.[11] Under federal law, forum-selection clauses are generally considered to be *prima facie* valid and should be enforced unless it would be unreasonable under the

---

[10]*Brown v. Federated Capital Corp*., 991 F.Supp.2d 857, 861, 2014 WL 97292, at *2(S.D. Tex. Jan. 6, 2014) (citing *Stinger v. Chase Bank, USA, NA*, 265 Fed.Appx. 224, 226-27(5th Cir. 2008) (evaluating whether to apply a contract provision mandating arbitration by assessing (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.).

[11]*Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997).

circumstances to do so.[12]  The term "unreasonable" is equated in the jurisprudence with the terms "unfair" and "unjust."[13]  There is a "strong presumption in favor of enforcement of forum selection clauses."[14]  The presumption of enforceability applies to negotiated forum-selection clauses and also to those set forth in form contracts.[15]  The burden is on the party resisting enforcement to demonstrate that enforcement would be unreasonable.[16]  In fact, "[t]he party resisting enforcement... bears a 'heavy burden of proof.'"[17]

There is no dispute that Kendall Garrett Mosing signed the Louisiana franchise agreements.  He also initialed and signed the franchise disclosure materials which preceded the agreements. Based on his acknowledgment that he

---

[12]*In re Spillman Development Group, Ltd*., 710 F.3d 299, 306 (5th Cir. 2013), citing *The Bremen v. Zapata Off–Shore Co*., 407 U.S. 1, 10 (1972).

[13]*The Bremen v. Zapata Off–Shore Co*., 407 U.S. at 15, 18; *Calix-Chacon v. Global Intern. Marine, Inc*., 493 F.3d 507, 511 (5th Cir. 2007) ("The Supreme Court reversed and held that in maritime actions forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable.")

[14]*Calix-Chacon v. Global Intern. Marine, Inc*., 493 F.3d at 513.

[15]*Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).  See, also, *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593 (1991), which enforced a forum-selection clause contained in non-negotiated, preprinted form contracts.

[16]*In re Spillman Development Group, Ltd*., 710 F.3d at 306.

[17]*Haynsworth v. The Corporation*, 121 F.3d at 963 (quoting *The Bremen v. Zapata Off–Shore Co*., 407 U.S. at 17).  See, also, *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008).

signed the Louisiana disclosure documents and franchise agreements,[18] as a sophisticated party, Mosing is not in a position to legitimately claim ignorance of the forum selection clauses contained in the documents. The plaintiffs argue instead that Mosing signed the Louisiana agreements as "Managing Member" of the three LLCs referenced in the agreements, which entities were never formed and do not exist.[19] Mosing further argues that he does not recall signing the Texas franchise agreements, which purport to bear his signature as franchisee, although Mosing does not dispute that he received and returned for editing a draft of the Texas franchise disclosure document in September, 2013. [Rec. Doc. 33, p. 3].

The defendants do not dispute that Mosing signed the Louisiana franchise agreements as Managing Member of entities which were never formed. Plaintiff Zloop La. LLC was formed by Mosing, its sole owner, on November 2, 2012, seventeen days after execution of the Louisiana agreements. The obvious question is whether either plaintiff can be bound by the forum-selection clause contained within the Louisiana agreements. A forum-selection clause in an agreement can be enforced as to a nonsignatory only if the nonsignatory is bound by that

---

[18] The Texas franchise agreements bear signatures purporting to be Mosing's, in his individual capacity as franchisee, but Mosing cannot recall signing those documents. See Rec. Doc. 11-4, p. 35.

[19] See Rec. Doc. 11-3, p. 90.

agreement under recognized contract or agency principles. Those principles are: incorporation by reference; assumption; agency; veil-piercing/alter ego; estoppel; and third party beneficiary.[20] The defendants invoke direct-benefits estoppel as the basis for applying the forum-selection clause to the plaintiffs. The Fifth Circuit has held that even a nonsignatory to an agreement may be bound by a forum selection clause under the direct-benefit estoppel theory "by knowingly seeking and obtaining 'direct benefits' from the contract,"[21] and/or "by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."[22] Other courts have found that forum-selection clauses may bind non-parties who are closely related to the dispute such that it becomes foreseeable that the non-party will be bound.[23] In determining whether a nonsignatory is closely related, the court considers factors including the nonsignatory's ownership of the signatory, the nonsignatory's involvement in the negotiations, the relationship between the two parties, and whether the

---

[20] *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514-17(5th Cir. 2006); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003).

[21]*Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

[22]*Id. See also Vloeibare Pret Limited v. Lloyd's Register North America, Inc.*, 2015 WL 1727355 at *3 (April 16, 2015).

[23]*See Hugel v. The Corps of Lloyd's,* 999 F.2d 206, 209-10(7th Cir. 1993); *Carlyle Investment Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015).

nonsignatory received a direct benefit from the agreement.[24]  Further, third parties

"that should have foreseen governance by the clause may also be bound to it."[25]

From the face of the Complaint it is clear that Mosing entered into the

Louisiana franchise agreements with the intent to avail himself or entities he

controlled of the benefits of the agreements. He signed the Louisiana agreements

as "Managing Member" of LLCs which did not exist, presumably to comply with

the franchise requirement that the franchisee be a corporation or LLC.[26]  Such

action is consistent with an effort by Mosing to exploit the agreement containing

the forum-selection clause.   Based on the record, it is also foreseeable that

multiple entities controlled by the same control person (Mosing) would be subject

to the forum selection clause, including Zloop La, LLC, which Mosing formed

days after signing the Louisiana agreements.  The incorporation of the Zloop name

into the LLC name cannot be coincidental. Based on the facts presented in the

Complaint, the Court finds that direct-benefit estoppel binds Mosing and the

---

[24]*Carlyle Investment Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d at 219; *Skold v. Galderma Labs., L.P.*, 2015 WL 1740032, at *13 (E.D. Pa. Apr. 17, 2015); *Weygandt. v. Weco, LLC*. 2009 WL 1351808, at *4 (Del. May 14, 2009).

[25]*First Financial Management Group, Inc. v. Universal Painters of Baltimore, Inc.*, 2012 WL 1150131, at *3 (E.D.Pa. Apr. 5,2012).

[26]See Rec. Doc. 11-3, pp. 7,26.

Mosing-owned Zloop La, LLC to the forum-selection agreements Mosing entered into in the Louisiana franchise agreements he signed.

The plaintiffs next argue that even if the court were to find the forum-selection clause to be valid and binding upon them, the clause does not encompass the claims made in this litigation, since the plaintiffs do not allege a breach of the franchise agreements or seek to enforce them, articulating instead numerous other claims based on violations of Louisiana business laws, unfair trade practices and civil fraud.[27] [Rec. Doc. 23, p. 8]. That argument is unpersuasive in light of and looking to the broad and unrestrictive language of the forum-selection clause at issue, which applies to "any action" by "either party." Such language is broad enough to encompass both statutory and tort claims, including claims of fraudulent inducement as articulated in the Complaint.[28] Further, the Fifth Circuit, interpreting similar and even more restrictive clauses, has generally rejected distinctions between tort and contract claims.[29] The plaintiffs' argument that the defendants would have needed to insert more specific language of the intent to

---

[27]The Complaint's introductory paragraph also references"breach of contract." [Rec. Doc. 1, p. 7].

[28]See *Harland Clarke Holdings Corp. v. Milken*, 997 F.Supp.2d 561, 571(W.D.Tx 2014), *citing Personal Security & Safety Systems*, 297 F.3d 388, 391 (5th Cir. 2002); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222-23 (5th Cir. 1998).

[29]See *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).

apply the provision to disputes beyond the franchise agreement, actually listing the types of claims contemplated [Rec. Doc. 23, p. 20] is offered without legal support of any kind, and the argument is unavailing, especially in light of the very broad language of the forum-selection clause at issue.

Next, the plaintiffs argue that the claims against the defendants are not based on the franchise agreements, which, according to the plaintiffs, "supply the background for and not the focus of Mosing's suit," [Rec. Doc. 23, p. 21] and are "contextual but not controlling."[Rec. Doc. 23, p. 28].  The allegations in the Complaint demonstrate that the plaintiffs rely heavily on the existence of the franchise agreements, the franchisor/franchisee relationship between the parties, references to federal and state franchise laws, the characterization of the franchise agreements as securities and business opportunities for application of federal and Louisiana laws, as well as claims allegedly stemming from the defendants' misrepresentations regarding income/earning potential of the franchises, and the defendants' alleged conversion of equipment purchased by Mosing as part of his purchase of the franchises. By the plaintiffs' design of the Complaint, the franchise agreements form a significant component of the claims made.  Therefore, the Court rejects the notion that the claims made in the instant litigation fall outside the scope of the forum-selection provision at issue, which by its language

is broad enough to encompass all of the plaintiffs' claims, including those claims unrelated to breach of the contracts containing the forum selection clause.[30]

It is the finding of this Court that the forum-selection clause included in the Louisiana franchise agreements is valid and applicable to the parties and the claims made by the plaintiffs. Given that finding, the Court need not determine at the validity/authenticity of the Texas franchise agreements.

*3. Whether enforcement of the forum-selection clause is reasonable*

Recognizing and acknowledging that a strong presumption exists in favor of enforcement of forum-selection clauses, the plaintiffs next assert that even if the Court were to find their claims are within the scope of the forum-selection clause, enforcement of the clause is unreasonable under the circumstances of this case. [Rec. Doc. 23, p. 30]. There are four bases for concluding that a forum-selection clause is unreasonable: (1) if the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) if the party seeking to escape enforcement will, as a practical matter, be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or

---

[30]*See MaxEn Capital, LLC v. Sutherland*, 2009 WL 936895, at *6 (S.D.Tex.Apr. 3, 2009); *Brown v. Federated Capital Corp.*, 991 F.Supp.2d 857, 862 (S.D.Tex.2014).

(4) if enforcement of the forum-selection clause would contravene a strong public policy of the forum state.[31]  According to the plaintiffs, "[t]he first and fourth exceptions are implicated in this case." [Rec. Doc. 23, p. 30].

The incorporation of a forum-selection clause into a contract as a product of fraud or overreaching would make the clause unreasonable.  However, it is well-settled, as the plaintiffs acknowledge, that in order to invalidate a forum-selection clause, the fraud and overreaching must be specific to the clause itself, and the inclusion of the clause in the contract must be shown to have been the product of fraud or coercion.[32]  There has been no showing that the forum-selection clause was the product of fraud or overreaching by the defendants.  The plaintiffs have vigorously argued that the franchise agreements themselves were products of fraud, but that is not sufficient in this analysis. While the plaintiffs have spent considerable effort impugning and challenging the authenticity of the Texas franchise agreements, they have not so challenged the Louisiana agreements, which Mosing has admitted he signed after also signing disclosure documents referencing the forum-selection clause at issue as a "risk factor"  to be considered.

---

[31]     *Calix-Chacon v. Global Intern. Marine, Inc*., 493 F.3d at 511; *Haynsworth v. The Corporation*, 121 F.3d at 963; *Carnival Cruise Lines v. Shute*, 499 U.S. at 595; *The Bremen v. Zapata Off–Shore Co*., 407 U.S. at 10.

[32]     *Scherk v. Alberto-Culver Co.,417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270(1974); Smith v. Lucent Technologies, Inc.*, 2004 WL 515769 (E.D.La. 3/16/04).

The plaintiffs have presented no credible argument or legal support to suggest that the inclusion of the forum-selection clause itself in the franchise agreements was a product of fraud.

The record also defeats any argument that the forum-selection clause resulted from overreaching. "Overreaching is that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties."[33] It is apparent from the record and the significant sums involved that the parties in this case were sophisticated individuals and businesses. There is no allegation by the plaintiffs of an inability to negotiate freely relative to the forum-selection issue.

The plaintiffs have also argued that public policy concerns preclude enforcement of the forum-selection clause at issue. "The public policy of Louisiana is expressed in its statutes and codes."[34] Thus, the statutory law of the state reflects its public policies. Conceding that the Louisiana Supreme Court has stated that contractual forum-selection clauses are not *per se* violative of public

---

[33]*Haynesworth v. The Corporation*, 121 F.3d 956, 965 n. 17(citations omitted).

[34]*Case Atlantic Co. v. Blount Bros. Const., Inc.*, 42,251 (La. App. 2 Cir. 06/20/ 07, 960 So.2d 1274, 1277, *writ denied*, 065 So.2d 403.

policy,[35] the plaintiffs point to provisions of the Louisiana Unfair Trade Practices Act [LUTPA], La. R.S. 51: 1407(A) and the Louisiana Business Opportunity law, La. R.S. 51:1823(7) as provisions which they contend preclude enforcement of the forum-selection clause.

The LUTPA anti-waiver provision at La. R.S. 51:1407(A) declares that it is against Louisiana public policy to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, and the statute declares that "no provision of any contract which purports to waive those provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts."[36]

In *Lejano v. Bandak,*[37] the Louisiana Supreme Court clarified that the provision, amended by Act 943 of the 1997 Legislature, "is limited in scope to transactions or interactions between out-of-state, professional telephone solicitors and Louisiana residents."[38]  In *Shelter Mutual Insurance. Co. v. Rimkus*

---

[35]     *Shelter Mutual Insurance Co. v. Rimkus Consulting Group, Inc. of La.,* 148 So.3d 871, 881 (La. 7/1/14).

[36]La. R.S. 51:1407.

[37]*Lejano v. Bandak*, 705 So.2d 158 (La. 1997).

[38]*Id.* at 170.

*Consulting Group, Inc.*, the Louisiana Supreme Court cited *Lejano* to conclude

that La. R.S. 51:1407 is limited in scope to interactions between out-of-state,

professional telephone solicitors and Louisiana residents.[39]  In *Lejano*, the

term"professional telephone solicitor" is referenced from legislative comments to

apply only to solicitations for charitable organizations.[40] That interpretation is

consistent with a definition of "professional solicitor" in La. R.S. 51:1901(6) at

Chapter 24 of the Unfair Trade Practices and Consumer Protection Law.  Finally,

§1407 is limited to actions in which the attorney general is seeking to restrain such

practices.[41] Thus, the Court rejects the notion that the protection intended by La.

R.S. 51:1407 fits the facts of the instant case "perfectly," as suggested by the

plaintiffs in brief. [Rec. Doc. 23, p. 34].

The plaintiffs also cite Louisiana's Business Opportunity Law which

contains a similar anti-waiver provision at La. R.S. 51:1823(7), restricting a

business opportunity seller or agent from "including in any agreement a waiver of

the purchaser's rights established by law."   What is not mentioned by the

---

[39]*Shelter Mutual,* 148 So.3d at 881.

[40]*Lejano*, 705 So.2d 158, n. 12.

[41] *Rodriguez v. Class Travel Worldwide, L.L.C.*, 2000 WL 222165, at *3 (E.D. La. Feb. 18, 2000).

-19-

plaintiffs is Louisiana's more specific franchise law, which would allow for the inclusion of forum-selection clauses in franchise agreements.  La. R.S. 12:1042 provides in part:

> **Unless provisions of a business franchise agreement provide otherwise**, when the business to be conducted pursuant to the agreement and the business location of the franchisee are exclusively in this state, disputes arising under a business franchise agreement shall be resolved in a forum inside this state....[42] [Emphasis added].

The defendants argue, citing the Louisiana Supreme Court decision in *Burge v. State*,[43] that the fundamental rule of statutory construction dictates that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.  By any analysis, the above-referenced provision belies any notion that forum-selection clauses in franchise agreements are against public policy in Louisiana, and the Court finds no basis for a conclusion that the forum-selection clause in the instant case is violative of any public policy implicit in the statutory provisions cited.

The plaintiffs next argue that enforcement of the forum selection clause violates Louisiana's strong policy against facilitating unlawful activity as stated in

---

[42]La. R.S. 12:1042.

[43]*Burge v. State*, 54 So.3d 1110, 1113 (La. 2011).

the 'clean hands doctrine.' [Rec. Doc. 23, p. 35]. The clean hands doctrine is generally recognized as a defense in Louisiana. A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part.[44]  According to the Louisiana Supreme Court,

> It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of courts of equity to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of one who seeks equity unclean.[45]

In support of the 'clean hands' argument, the plaintiffs assert that the defendants seek to enforce franchise agreements which constitute unfair trade practices under federal and state law, since the Louisiana franchise agreements were signed by Mosing eleven days after he signed, as Franchisee, the franchise disclosure documents in violation of provisions which they allege require a minimum of 14 days to elapse between a franchisee signing disclosure

---

[44]*Guillie v. Comprehensive Addiction Programs,* (La.App. 4 Cir. 4/21/99), 735 So.2d 779.

[45] *Cimarex Energy Co. v. Mauboules,* 40 So.3d 931, 945 (La. 4/9/10)(*citing City of New Orleans v. Levy*, 98 So.2d 210, 218 (La.1957).

documentation and a franchise agreement.[46] The defendants respond that Mosing

"was furnished" with the disclosure documents "on or around September 10,

2012," well over the 14 day requirement. [Rec. Doc. 28-1, p. 2]. The signature

page of the disclosure document confirms that Mosing signed the document on

October 4, 2012. Above his signature, on the same page, appears the statement

that Mosing "received a disclosure document dated August 1, 2012...." [Rec. Doc.

11-3, p. 56]. The substantive argument that the timing/notice issue described

constitutes an unfair trade practice or other violation of law is not directed to the

forum-selection clause but to the merits of the case and is therefore premature in

the context of the motion before the court.[47] This Court finds the argument

likewise insufficient to preclude enforcement of the forum selection clause at issue

on public policy grounds.

Therefore, this Court finds that, based on an analysis of the relevant factors,

enforcement of the forum selection clause is reasonable under the circumstances.

---

[46]16 C.F.R. 436-37. 16 C.F.R. 436.2 provides that it is an unfair or deceptive act or practice for a franchisor to fail to furnish a prospective franchisee with a copy of the current disclosure document at least 14 calendar days before the franchisee signs a binding agreement.

[47]*Haynsworth v. The Corporation*, 121 F.3d at 964 (Allegations that the entire contract was procured as a result of fraud or overreaching are "inapposite to our [forum-selection clause] enforceability determination, which must...precede any analysis of the merits [of the contract's validity]."

*4. Whether transfer is appropriate under the 28 U.S.C. 1404(a) analysis mandated by Atlantic Marine vs. United States District Court for the Western District of Texas*

Having answered the threshold questions to find that the forum-selection clause in the Louisiana franchise agreements is mandatory, applicable to the parties and claims made, and that the clause is valid and enforceable, the Court concludes that the framework to determine a venue transfer under 28 U.S.C. §1404(a), as modified by the Supreme Court in *Atlantic Marine,* controls.[48]

Under §1404(a), a district court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. *Atlantic Marine* stated not only that §1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district" but that "a proper application of §1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases."[49]

---

[48] *Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas*, __ U.S. __, 134 S.Ct. 568, 575-579 __ L.Ed. 2d __(2013).

[49]*Id.*, at 579.

The Court also revised the analysis to be used in evaluating whether transfer should be ordered in such cases, stating that the plaintiff's choice of forum carries no weight; no arguments concerning the parties' private interests are permitted, and the court must deem those interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract[50]; the court may consider arguments about public-interest factors only, and the original venue's choice-of-law rules are not to be considered.[51]  A plaintiff seeking to maintain the litigation in a forum other than that chosen in the forum-selection clause "bears the burden of establishing  that transfer to the  forum for which the parties bargained is unwarranted. . . and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."[52]  The court also stated that the evaluation of public interest factors will rarely defeat a transfer motion, so that "the practical result is that forum-selection clauses should control except in unusual cases."[53]

---

[50] *Id.,* at 582.  *See also In re Rolls Royce Corp*., 775 F.3d 671, 678(5th Cir. 2014).

[51]*Id.*, at 581-82.

[52]*Id.*

[53]*Id.*

The Court based the analysis on the parties' expectations as memorialized in their contract, stating:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.[54]

Thus, under the required §1404(a) analysis, this Court deems all private interest factors to weigh in favor of transferring the case to the Western District of North Carolina.

In determining whether "extraordinary circumstances" exist to warrant denial of the transfer, the Court examines the public interest factors that the court may consider in deciding a transfer motion as presented herein. Those factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; and (3) the familiarity of the forum with the law that will govern the case , and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.[55] The

---

[54]*Id.,* at 583.

[55] *Id.,* at 581 n.6.

plaintiffs bear the heavy burden of showing that the public interest factors "overwhelmingly disfavor a transfer."[56]

The plaintiffs have offered no argument regarding court congestion factors which might impact the first factor, and the Court finds this factor to be neutral. The plaintiffs argue that Mosing and Zloop LA, LLC are Louisiana-based and their business interests are located in this state, warranting consideration of their claims in this state. However, since the plaintiffs have already agreed to bring suit only in a North Carolina forum, they have effectively exercised their venue privilege.[57] As to this public interest factor, the plaintiffs have not shown that transfer is overwhelmingly disfavored.

As to the third and fourth factors, it is reasonable to find that federal courts in North Carolina can aptly apply the laws at issue in this matter, and the Supreme Court has stated that familiarity of the forum with the governing law should only be considered a public-interest factor weighing against transfer if the governing law is "exceptionally arcane."[58] No such showing has been made and this Court is not persuaded that the court in North Carolina would be less familiar with the law

---

[56] *Id. See also Arrington v. Everett Financial, Inc.*, 2015 WL 2401481(W.D. Texas, 5/20/15).

[57] *Id.,* at 581-82, 584.

[58] *Id.,* 134 S.Ct. at 584. *See also Brown v. Federated Capital Corp.*, 991 F.Supp.2d 857, 863 (S.D. Tex. 2014).

governing this dispute so as to disfavor transfer on this ground. While this Court is sensitive to the potential discrepancies between Louisiana and North Carolina law and the possibility of conflicting opinions from those states, the Court does not find those potential legal considerations to be so exceptional as to make transfer of venue unwarranted in this case with a valid forum selection clause.

The Court finds that the plaintiffs have not met their heavy burden of showing that public-interest factors overwhelmingly disfavor transfer. Since this is not one of those "most unusual cases" in which the public interest overwhelmingly disfavors transfer, this Court finds that the interests of justice as defined in §1404(a) are served by holding the plaintiffs to their bargain via transfer to the parties' agreed-upon forum.[59] Therefore, the Motion to Transfer Venue pursuant to 28 U.S.C. §1404(a) is granted, and the Court will order that this case be transferred to the Western District of North Carolina.

Signed at Lafayette, Louisiana this 25th day of June, 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[59] *Id.*, at 583. *See also Cline v. Carnival Corp.*, No. 3:13-CV-1090-B, 2014 WL 550738, *6 (N.D. Tex., Feb. 12, 2014).